

MAKING HOME AFFORDABLE



**WACHOVIA**

*You may be able to make your payments more affordable.*
*Act now to get the help you need!*

November 21, 2011

BOBBY BROWN AND LAVERNE BROWN
105 SUNSET LN
EDGEWATER PRK, NJ 08010-1938

**Loan #:** 0047701271
**Property Address:** 105 SUNSET LN
EDGEWATER PARK TOWNSHIP, NJ
08010-1938

Dear BOBBY BROWN AND LAVERNE BROWN:

**Congratulations!** You are eligible for a Home Affordable Modification. As previously described, if you comply with the terms of the Home Affordable Modification trial period plan, we will modify your mortgage loan and waive all prior late charges that remain unpaid.

The enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed terms of your modified mortgage. Based on the date we received the most recent Trial Period Payment, the first payment due date under the enclosed Modification Agreement has been extended by one month. Due to this extension of the first payment due date, the modified interest rate was determined upon completion of the Trial Period Plan, any interest that would accrue during the interim month will be waived, and you will lose one month's accrual of the incentive payment if you do not make an additional trial period payment.

**How to Accept This Offer:**

**STEP 1   COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**

To accept this offer, <u>you must sign and return both copies</u> of the Modification Agreement <u>to us in the enclosed, pre-paid envelope</u> by **December 25, 2011**. If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us. We encourage you to <u>make a copy</u> of all documents for your records. If you do not send both signed copies of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

**STEP 2   CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME**

<u>Be certain to make any remaining trial period payments on or before the dates they are due</u>. If the trial period payments are made after their due dates or in amounts different from the amount required, your loan may not be modified.

To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Modification Agreement.

We look forward to hearing from you no later than **December 25, 2011**.

Sincerely,

*Mary C. Reeder*
*Senior Vice President*
*Wachovia Mortgage*

The *Making Home Affordable* program was created to help millions of homeowners refinance or modify their mortgages. As part of this program, we — your mortgage servicer — and the Federal Government are working to offer you options to help you stay in your home.

*Attachments: Summary of Your Modified Mortgage, Two copies of the Modification Agreement*

Wachovia Mortgage is a division of Wells Fargo Bank, N.A.

## SUMMARY

0047701271

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. In addition, your mortgage insurance premium may increase as a result of the higher mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C.

**INTEREST FORGIVEN.** The accrued, outstanding, and not capitalized interest through November 30, 2011 will be forgiven.

**DEFERRAL OF PRINCIPAL.** To further reduce your mortgage payment, we will defer collection of and not collect interest on $63,500.00 of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.

**PRINCIPAL REDUCTION ALTERNATIVE.** You may be eligible to have some of your principal forgiven on a deferred basis. If you make your monthly mortgage payments on time, we will forgive $21,166.67 of the principal balance of your loan each year on the anniversary of your first trial period payment date for three years. You will lose this benefit if your modified loan loses good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, at any time during this three year period, including all accrued and unapplied amounts, even if the mortgage loan is later brought current. Any principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional. Please contact us at 1.888.565.1422 if you do not want principal forgiveness, we may have other modification options for you.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. Wells Fargo Bank, N.A. will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Wells Fargo Bank, N.A. must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $537.65. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $743.40. You may pay this amount over a 5-year (60 months) period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.**

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan after the trial period.

**CHANGE TO BIWEEKLY PAYMENT LOANS.** If the Loan is a biweekly loan, through the enclosed Modification Agreement, the Loan will convert to a monthly payment schedule. References in the Note and Security Instrument to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the unpaid principal by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due.

**FEES.** There are no fees or other charges for this modification.

**SUMMARY**

**0047701271**

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at 1.888.565.1422.

**BORROWER INCENTIVE.** If you make your monthly mortgage payments on time, you will accrue a monthly benefit equal to $83.33. As long as your mortgage loan does not lose good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, we will apply your accrued monthly benefit to your mortgage loan and reduce your principal balance after each of the first through fifth anniversaries of the month in which the trial period plan is executed. If your modified loan loses good standing at any time during this five year period, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current.

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1]  BOBBY BROWN
LAVERNE BROWN
Lender ("Lender"):  **Wachovia Mortgage,
a division of Wells Fargo Bank, N.A.**
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 11/20/2007
Loan Number:  0047701271
Property Address ("Property"):  105 SUNSET LN
**EDGEWATER PARK TOWNSHIP, NJ 08010-1938**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;
    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));
    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
    G.  I have made or will make all payments required under a trial period plan.
    H.  If I received a discharge in a Chapter 7 bankruptcy proceeding and the mortgage debt was not reaffirmed, then this representation applies: I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

*(page 1 of 6 pages)*

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 01/01/2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 01/01/2012.

   A. The Maturity Date will be: 12/01/2037.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan, less amounts forgiven or waived for NSF fees and outstanding, uncapitalized interest. The new principal balance of my Note will be $253,277.64 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. $63,500.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $63,500.00 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 01/01/2012, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $189,777.64. Interest at the rate of 3.600% will begin to accrue on the Interest Bearing Principal Balance as of 12/01/2011 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 01/01/2012. My payment schedule for the modified Loan is as follows:

Loan Number 0047701271

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 3.600% | 12/01/2011 | $937.55 | $537.65, may adjust periodically | $1,475.20, may adjust periodically | 01/01/2012 | 60 |
| 6-26 | 4.000% | 12/01/2016 | $972.44 | May adjust periodically | May adjust periodically | 01/01/2016 | 252 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

    The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

    I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

    I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

*(page 3 of 6 pages)*

**Notice to Borrower:** The Deferred Principal Balance will result in a balloon payment. A balloon payment is a final lump sum payment due at the end of your loan. If you do not have the funds to pay the balloon payment when it comes due, you may have to obtain a new loan against your property to make the balloon payment. In that case, you may have to pay commissions, fees, and expenses for the arranging of the new loan. In addition, if you are unable to make the monthly payments or the balloon payment, you may lose the property and all of your equity through foreclosure. Keep this in mind in deciding upon this modification. The balloon payment on this loan is due 12/01/2037 or upon earlier payoff of the loan.

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

   E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

   F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

   G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

   H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

Loan Number 0047701271

P. If your mortgage is a biweekly mortgage with payments due every two weeks, through the attached modification agreement, the Loan will convert to a MONTHLY payment schedule. To accommodate monthly payments, interest will be charged based on a 12 month year and a 30 day month.

Q. If included, the undersigned borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled. You need to complete the enclosed Automatic Loan Payment Authorization form to establish automatic payment drafting.

In Witness Whereof, the Lender and I have executed this Agreement.

<u>Wells Fargo Bank, N.A.</u>  
Lender

_____ (Seal)  
BOBBY BROWN          Date

By: _____  
Mary C. Reeder  
Senior Vice President

_____ (Seal)  
LAVERNE BROWN       Date

_____  
Date

# THIS SPACE LEFT BLANK INTENTIONALLY

*(page 6 of 6 pages)*

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1]              **BOBBY BROWN**
                                **LAVERNE BROWN**
Lender ("Lender"):              **Wachovia Mortgage,**
                                **a division of Wells Fargo Bank, N.A.**
Date of first lien Security Instrument ("Mortgage") and Note ("Note"):  11/20/2007
Loan Number:                    0047701271
Property Address ("Property"):  105 SUNSET LN
                                EDGEWATER PARK TOWNSHIP, NJ 08010-1938

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;
    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
    D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));
    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
    G.  I have made or will make all payments required under a trial period plan.
    H.  If I received a discharge in a Chapter 7 bankruptcy proceeding and the mortgage debt was not reaffirmed, then this representation applies: I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

*(page 1 of 6 pages)*

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 01/01/2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 01/01/2012.

   A. The Maturity Date will be: 12/01/2037.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan, less amounts forgiven or waived for NSF fees and outstanding, uncapitalized interest. The new principal balance of my Note will be $253,277.64 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. $63,500.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $63,500.00 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 01/01/2012, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $189,777.64. Interest at the rate of 3.600% will begin to accrue on the Interest Bearing Principal Balance as of 12/01/2011 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 01/01/2012. My payment schedule for the modified Loan is as follows:

*(page 2 of 6 pages)*

Loan Number 0047701271

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 3.600% | 12/01/2011 | $937.55 | $537.65, may adjust periodically | $1,475.20, may adjust periodically | 01/01/2012 | 60 |
| 6-26 | 4.000% | 12/01/2016 | $972.44 | May adjust periodically | May adjust periodically | 01/01/2016 | 252 |

\* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

    The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

    I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

    I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

  D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

  E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

  F.  I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

Loan Number 0047701271

>  **Notice to Borrower:** The Deferred Principal Balance will result in a balloon payment. A balloon payment is a final lump sum payment due at the end of your loan. If you do not have the funds to pay the balloon payment when it comes due, you may have to obtain a new loan against your property to make the balloon payment. In that case, you may have to pay commissions, fees, and expenses for the arranging of the new loan. In addition, if you are unable to make the monthly payments or the balloon payment, you may lose the property and all of your equity through foreclosure. Keep this in mind in deciding upon this modification. The balloon payment on this loan is due 12/01/2037 or upon earlier payoff of the loan.

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

   E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

   F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

   G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

   H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

Loan Number 0047701271

P. If your mortgage is a biweekly mortgage with payments due every two weeks, through the attached modification agreement, the Loan will convert to a MONTHLY payment schedule. To accommodate monthly payments, interest will be charged based on a 12 month year and a 30 day month.

Q. If included, the undersigned borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled. You need to complete the enclosed Automatic Loan Payment Authorization form to establish automatic payment drafting.

In Witness Whereof, the Lender and I have executed this Agreement.

Wells Fargo Bank, N.A. _____ (Seal)
Lender                         BOBBY BROWN          Date

By: _____      _____ (Seal)
    Mary C. Reeder              LAVERNE BROWN        Date
    Senior Vice President

_____
Date

# THIS SPACE LEFT BLANK INTENTIONALLY

*(page 6 of 6 pages)*

Automatic Loan Payment Authorization

Thank you for selecting Wachovia Mortgage, a division of Wells Fargo Bank, N.A. for your home financing. Managing your mortgage payments is easy when you enroll in the Automatic Loan Payment Plan. Simply choose the option below that matches your personal payday cycle, and your monthly payments will be withdrawn automatically from your checking or savings account. The Automatic Loan Payment Plan is free, secure and more convenient than writing checks and mailing payments.

*Please note: Enrolling in the Automatic Loan Payment Plan does not change the principal and interest payment arrangement specified* in your mortgage loan documents. Funds will be applied to your loan in accordance with your Security Instrument.

To enroll in the Automatic Loan Payment Plan, follow the steps below and fax this signed form to 210-257-2552, or mail it to Wachovia Mortgage, P.O. Box 659558, San Antonio, TX 78265-9558, and Attn: MAC T7416-023.

1. Select the date that matches your pay schedule _____
Please check the appropriate box to mark your choice. If this form is signed but no option is selected, you will be set up for monthly withdrawals on your due date.

☐ Your monthly payment amount will be withdrawn on your due date.

☐ Withdraw funds on the following date of the month: _____
Choose any date between your due date and before a late charge is assessed or your payment becomes overdue.

2. Specify Additional Principal, if any_____
You can choose to add an additional amount to each of your electronic withdrawals to be applied to your outstanding loan principal.

☐ Yes, please add $ _____ to each of my automatic electronic withdrawals.

3. Supply your account Information _____
Your Bank Account must be at a U.S. bank, savings and loan or other financial institution, which is accessible by the Automated Clearing House (ACH), and must be a personal (non-business) account from which you are authorized to withdraw.

Account type:   ☐ Checking   ☐ Savings   Name of US Financial Institution. _____

Customer Bank Routing Number: _____   Customer Bank Account Number _____
*(9-digit number at the bottom left of your check)*   *(To the right of the Bank Routing Number on your check)*

4. Signature _____
By signing below, I agree to the Terms and Conditions listed here.

Property Address _____

Mortgage Loan Number: _____

Customer Name: _____   Customer Signature/Date: _____

Automatic Loan Payment Plan Terms and Conditions _____
- I authorize Wachovia Mortgage, or its authorized representatives and its service providers to initiate electronic withdrawals from my designated account to make monthly payments on my mortgage. I agree to be bound by the rules of the National Automated Clearing House Association (NACHA) as in effect from time to time and acknowledge that entries may not be initiated that violate the laws of the United States.
- I understand that I will receive confirmation specifying the date the electronic withdrawals will begin. I understand that I will continue to make my payments until I receive this confirmation and electronic withdrawals begin.
- I understand that this authorization and the program services in no way alter or lessen my obligation under my existing mortgage contract regarding the amount of monthly payments, when payments are due, the applications of payments, the assessment of late charges or the determination of delinquencies. I must maintain sufficient funds in my account for withdrawal of my monthly payment.
- I understand the electronic withdrawal amount will vary with changes in escrow or principal and interest components, if applicable.
- I understand that I must provide Wachovia Mortgage notice of at least 10 days for any requests to modify, change or terminate participation in this program. I understand that if I modify, change, or terminate participation in this program, I may not realize the benefits.
- I agree to be bound by the program's Terms and Conditions, which are stated here.

Change the Payment Amount or Date Information: You can change the amount that Wachovia withdraws from your bank account, and if you have a monthly loan, you can also change the date on which Wachovia withdraws from your bank account under this written authorization, by speaking with a Wachovia customer service representative at 1-800-642-0257 or on-line at www.wachovia.com. We will send you a written confirmation notice before drafting the new amount or changing the date.

For questions about your enrollment, please retain a copy of this form and call 1-800-642-0257.

Excess Activity Fees may apply if you exceed these federally-mandated transaction limits for savings accounts:
- Three withdrawals in a month by check, draft, point of sale purchase, check card, or other similar withdrawal payable to a third party.
- A total of six transfers and /or withdrawals in a month including: those listed above, preauthorized or automatic transfers (including overdraft protection transfers and payment to third parties), and transfers made online or by telephone.

For more information, please refer to your account agreement with your financial institution. Wachovia Mortgage, a division of Wells Fargo Bank, N.A.

# Important Information:

# Property Tax Assessments In Declining Markets



Recent real estate trends indicate that certain markets are experiencing declining property values. A decline in property value happens when the current market value of your property is less than the assessed value. Refer to your most recent property tax bill to determine the current assessed value of your property.

Should your property's assessed value be greater than the current market value, you may initiate a review of your property's assessed value through the Tax Assessor's Office for the county in which the property is located.

© 2009 Wachovia Bank, N.A. and Wachovia Bank of Delaware, N.A.
All rights reserved. 090346

WACHOVIA