'01/03/00  MON 14:35 FAX                                                                    ☒008

[Space Above This Line For Recording Data]

L786B

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 22nd day of August, 2011, between Laverne Brown ("Borrower"), and Seterus, Inc. ("Servicer"), and Mortgage Electronic Registration Systems, Inc. ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated June 22, 2007 and recorded in Book or Liber 11533, at page(s) 188, Instrument Number, of the BURLINGTON COUNTY, NJ Records of Burlington County and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

36 Beaverdale Ln, Willingboro, NJ 08046,

the real property described being set forth as follows:

Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of September 1, 2011, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $126,071.28, consisting of the unpaid amount(s) loaned to Borrower by Servicer plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Servicer. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 5%, from August 1, 2011. Borrower promises to make monthly payments of principal and interest of U.S. $607.91, beginning on the 1st day of September, 2011, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 5% will remain in effect until principal and interest are paid in full. If on August 1, 2051 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Servicer's prior written consent, Servicer may require immediate payment in full of all sums secured by the Security Instrument. If Servicer exercises this option, Servicer shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower





must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.   Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider.  By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   (b)   all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.   Borrower understands and agrees that:

   (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Servicer's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Servicer is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Servicer.

   (c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (d)   All costs and expenses incurred by Servicer in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be

01/03/00  MON 14:35 FAX                                                    ☐010

secured by the Security Instrument, unless stipulated otherwise by Servicer.

(e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Servicer, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

_____N|A_____ (Seal)                _____ (Seal) X
                        -Servicer                                          -Borrower
                **Seterus, Inc.**                     _____N|A_____ (Seal)
By: _____                                               -Borrower

Nathan Metcalfe
SAFE Officer    [Space Below This Line For Acknowledgments] _____

OCT 0 7 2011

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT      Form 3179   1/01 (rev. 01/09)   (page 3 of 3)

01/03/00  MON 14:36 FAX

## ACKNOWLEDGEMENT

State of _New Jersey_

County of _Burlington_

On _August 31st, 2011_ before me, _Shanice S. Horis_ personally appeared

_Laverne Thomas Brown_                    _Only_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____(Seal)

SHANICE BROWN LEWIS
Notary Public
State of New Jersey
My Commission Expires Jul 22, 2013

RE: Laverne Brown

L786 - Fannie Mae & Seterus, Inc. Modifications

F02KB

## Exhibit A

ALL that certain Lot, parcel or tract of land, situate and lying in the Township of Willingboro, County of Burlington, State of New Jersey, and being more particularly described in accordance with a Survey by Donovan Surveyors, dated June 13, 2007:

BEGINNING at a point in the Northeasterly line of Beaverdale Lane, (50 feet wide), and corner to Lot 12 on plan hereinafter mentioned, said point being a distance of 401.65 feet measured Southeasterly along the tangent curve of the Northeasterly line of Beaverdale Lane from the Southeasterly line of Brunswick Lane, (50 feet wide); thence

(1) Along the line of Lot 12 and being perpendicular to the last aforementioned Course, North 44 degrees 30 minutes 00 seconds East, a distance of 100.00 feet to a point in the line of Lot 20 and the Southwesterly side of a 10 foot wide Sanitary Sewer Easement; thence

(2) Partly along the line of Lot 20 and partly along the line of Lot 21 and along the Southwesterly line of a 10 foot wide Sanitary Sewer Easement, South 45 degrees 30 minutes 00 seconds East, a distance of 65.00 feet to a point corner to Lot 10; thence

(3) Along the line of Lot 10 and perpendicular to the last aforementioned course, along a bearing of South 44 degrees 30 minutes 00 seconds West, a distance of 100.00 feet to a point in the Northeasterly line of Beaverdale Lane; thence

(4) Along the Northeasterly line of Beaverdale Lane and being perpendicular to the last aforementioned course, North 45 degrees 30 minutes 00 seconds West, a distance of 65.00 feet to a point corner to Lot 12 and point and place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 11 in Block 225 on the Township of Willingboro Tax Map.

Also Known As: 36 Beaverdale Ln, Willingboro, NJ 08046



*L789B*

[Space Above This Line for Recording Data]

## ESCROW AGREEMENT

This Escrow Agreement ("Agreement"), made on August 22, 2011 between Laverne Brown ("Borrower") and Seterus, Inc. is entered into in connection with Borrower's promissory note dated June 22, 2007 ("Note"); and the Loan Modification Agreement dated August 22, 2011 between the parties ("Modification Agreement"), which is secured by the following real property ("Property").

36 Beaverdale Ln
Willingboro, NJ 08046

For valuable consideration, the parties agree as follows:

1.  In addition to the monthly payment that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Seterus, Inc. a monthly escrow payment in the amount of $515.30 for deposit into an escrow account for necessary payments to be made by Seterus, Inc., including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Seterus, Inc. may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment.

2.  Each Escrow Payment shall be due on the same day of the month as the monthly payment due under the Modification, commencing September 1, 2011.

3.  In the event Escrow Payments are not made and Seterus, Inc. advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.

4.  Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Seterus, Inc. may exercise its rights under the Note and Modification Agreement.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1/01 (rev. 01/09)  (page 1 of 2)

3.  Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Seterus, Inc., Seterus, Inc. shall not be required to pay any interest or earnings on the payments held.

Seterus, Inc.

By: ___N|A___

_____  X
Borrower

___N|A___
_____
Borrower

_____ [Space Below This Line For Acknowledgments]

Nathan Metcalfe
SAFE Officer        OCT 0 7 2011

SHANICE DIONNE LEWIS
Notary Public
State of New Jersey
My Commission Expires Jul 22, 2013

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179   1/01 (rev. 01/09)   (page 2 of 3)

**ACKNOWLEDGEMENT**

State of _New Jersey_

County of _Burlington_

On _August 31st, 2011_ before me, _Shanice D. Lewis_ personally appeared
_Laverne Thomas Brown_, _Only_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

RE: Laverne Brown

L789 - Escrow Agreements

SHANICE DIONNE LEWIS
Notary Public
State of New Jersey
My Commission Expires Jul 22, 2013

FO25B

Return To:
GreenPoint Mortgage Funding,
Inc.
981 Airway Court, Suite E
Santa Rosa, CA 95403-2049

Prepared By:
GreenPoint Mortgage Funding,
Inc.
100 Wood Hollow Drive, Novato,
CA 94945

BURLINGTON COUNTY
CLERK

2007 JUL -9 A 10 36

RECEIVED

―――――――――[Space Above This Line For Recording Data]―――――――――

Record & Return To:
Benson Settlement Company
101. N 7th Avenue, Suite B
West Reading, PA 19611
Phone: 610-685-4400
File No. JNNJ-1103-07

# MORTGAGE

MIN 

BURLINGTON COUNTY
CLERK

2007 AUG 10 A 10 26

RECEIVED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 22, 2007 together with all Riders to this document.
(B) "Borrower" is Laverne  Brown, A Married Woman

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

0979

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3031 1/01

VMP -6A(NJ) (0512)
Page 1 of 15
    VMP Mortgage Solutions, Inc.
Customized by GreenPoint Mortgage Funding, Inc.

MB11535PG188

(D) "Lender" is GreenPoint Mortgage Funding, Inc.

Lender is a Corporation
organized and existing under the laws of the State of New York
Lender's address is 100 Wood Hollow Drive, Novato, CA 94945

(E) "Note" means the promissory note signed by Borrower and dated June 22, 2007
The Note states that Borrower owes Lender one hundred eighteen thousand four hundred
and 00/100                                                                                                    Dollars
(U.S. $118,400.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than July 1, 2037

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |
| ☐ Occupancy Rider | ☐ Interim Interest Rider | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

0979

MB 11535 PG 189

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the
            County              of              Burlington              :
     [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
As more particulary described in exhibit "A" attached hereto and made a
part hereof

Property Account Number: 38-00225-00011                    which currently has the address of
36 Beverdale Lane                                                               [Street]
Willingboro                              [City], New Jersey 08046          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

0979

MB | 1535 PG | 90

## Legal Description Exhibit A

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Willingboro, County of Burlington, State of New Jersey, and being more particularly described in accordance with a Survey by Donovan Surveyors, dated June 13, 2007:

BEGINNING at a point in the Northeasterly line of Beaverdale Lane, (50 feet wide), and corner to Lot 12 on plan hereinafter mentioned, said point being a distance of 401.65 feet measured Southeasterly along the tangent curve of the Northeasterly line of Beaverdale Lane from the Southeasterly line of Brunswick Lane, (50 feet wide); thence

(1)    Along the line of Lot 12 and being perpendicular to the last aforementioned Course, North 44 degrees 30 minutes 00 seconds East, a distance of 100.00 feet to a point in the line of Lot 20 and the Southwesterly side of a 10 foot wide Sanitary Sewer Easement; thence

(2)    Partly along the line of Lot 20 and partly along the line of Lot 21 and along the Southwesterly line of a 10 foot wide Sanitary Sewer Easement, South 45 degrees 30 minutes 00 seconds East, a distance of 65.00 feet to a point corner to Lot 10; thence

(3)    Along the line of Lot 10 and perpendicular to the last aforementioned course, along a bearing of South 44 degrees 30 minutes 00 seconds West, a distance of 100.00 feet to a point in the Northeasterly line of Beaverdale Lane; thence

(4)    Along the Northeasterly line of Beaverdale Lane and being perpendicular to the last aforementioned course, North 45 degrees 30 minutes 00 seconds West, a distance of 65.00 feet to a point corner to Lot 12 and point and place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 11 in Block 225 on the Township of Willingboro Tax Map.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

0979

MB 11535 PG 192

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

0979

 -6A(NJ) (0512)                    Page 5 of 15                    Form 3031 1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

0979

MB 1 1 5 3 5 PG 1 9 4

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in
Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance
claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the
insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day
period will begin when the notice is given. In either event, or if Lender acquires the Property under
Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance
proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and
(b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by
Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the
coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or
to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal
residence within 60 days after the execution of this Security Instrument and shall continue to occupy the
Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender
otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating
circumstances exist which are beyond Borrower's control.

   7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not
destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the
Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in
order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is
determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall
promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or
condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower
shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such
purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of
progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient
to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of
such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has
reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give
Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

   8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application
process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's
knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender
(or failed to provide Lender with material information) in connection with the Loan. Material
representations include, but are not limited to, representations concerning Borrower's occupancy of the
Property as Borrower's principal residence.

   9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If
(a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there
is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under
this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for
enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or
regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is
reasonable or appropriate to protect Lender's interest in the Property and rights under this Security
Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing
the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien
which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

0979

 -6A(NJ) (0512)                                    Page 7 of 15                                    Form 3031 1/01

MB I 1 5 3 5 PG I 9 5

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

0979

HB 1 1 5 3 5 PG 1 9 6

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

0979

MB I I 535 PG I 97

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

  Page 10 of 15    Form 3031 1/01

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

0979

MB I I 535 PG I 99

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note; the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MB I 1535 PG 200

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Section 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

0979

MB 1 1 5 3 5 PG 2 0 1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____    _____ (Seal)
                                      Laverne Brown                     -Borrower

                                      _____ (Seal)
                                                                        -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                     -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                     -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                     -Borrower

                                                                        0979

-6A (NJ) (0512)              Page 14 of 15            Form 3031 1/01

MB 1 1 535 PG 202

**STATE OF NEW JERSEY,** *Camden* **County ss:**

On this 22ⁿᵈ day of June 2007 , before me, the subscriber,
personally appeared **Laverne Brown**

who, I am satisfied,
is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that
he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein
expressed.

_____
Notary Public

Susan L. Meader
Notary Public
Camden County, New Jersey
My Commission Expires 11/17/2009

0979

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 22nd        day of June, 2007                ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to GreenPoint Mortgage
Funding, Inc.

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at: 36 Beverdale Lane, Willingboro, NJ   08046

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

0979

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

Wolters Kluwer Financial Services
VMP ®-57R (0411).01
Page 1 of 3

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

0979

VMP ®-57R (0411).01                Page 2 of 3                Form 3170 1/01

MB 1 1535 PG 205

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_Laverne Brown_ _____ (Seal)        _____ (Seal)
Laverne Brown                    -Borrower                                          -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                          -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                          -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                          -Borrower


0979

VMP®-57R (0411).01            Page 3 of 3            Form 3170 1/01

# RECORDING DATA PAGE

```
Consideration :
Code           :
Transfer Fee   :
Recording Date: 08/13/2007
Document No    : 4464184      ccjones

BENSON SETTLEMENT CO
2 WOODLAND RD
WYOMISSING, PA   19610


Receipt No     : 724380
Document No    : 4464184
Document Type  : MTG
Recording Date: 08/13/2007
Login Id       : ccjones

       Recorded
   Aug 13 2007 10:10am
Burlington County Clerk
```

**Clerk of Burlington County • 49 Rancocas Rd. • Mt. Holly, NJ 08060**
**609-265-5180**





BURLINGTON COUNTY
CLERK

# NEW JERSEY

COUNTY OF *BURLINGTON*
LOAN NO. ~~~ ~~~~ *[LB0142]*

2010 NOV -8  A 10: 08

RECEIVED

POOL NO.

Assignment-Interv.-Recorded

PREPARED BY:
SECURITY CONNECTIONS, INC.
WHEN RECORDED MAIL TO:
*LBPS*
*14523 SW MILLIKAN WAY, #200*
*BEAVERTON, OR 97005*
*ATTN*

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: That on the 27th day of *OCTOBER*____, *2010* but effective *JUNE 1, 2010*
*MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GREENPOINT MORTGAGE*
*FUNDING, INC. 3300 S.W. 34TH AVENUE, SUITE 101, OCALA, FL 34474*

_____, Party of the First Part,
in consideration of the sum of One Dollar ($1.00) lawful money of the United States and other good
and valuable consideration, to it in hand paid by *FANNIE MAE ("FEDERAL NATIONAL MORTGAGE*
*ASSOCIATION") 14221 DALLAS PARKWAY, SUITE 1000 DALLAS, TX 75254*

_____, Party of the Second Part,
at or before delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained,
sold, assigned, transferred and set over unto the said Party of the Second Part, its successors or assigns,
a certain Indenture of Mortgage, dated the *22nd* day of _____*JUNE*_____, *2007*, made
by *LAVERNE BROWN, A MARRIED WOMAN*

to secure the payment of the sum of *ONE HUNDRED EIGHTEEN THOUSAND FOUR HUNDRED and NO/100-----*
($ *118,400.00* ) Dollars for the property located in the *TOWNSHIP*_____ of *WILLINGBORO*
which Mortgage is recorded in the Office of the County Clerk of *BURLINGTON*_____ and State of New Jersey,
recorded on _____*AUGUST 13, 2007* in Document No. *4464184*_____, Book *11535*
or Mortgages, Page *188*_____.
PROPERTY ADDRESS: *36 BEVERDALE LANE, WILLINGBORO, NJ 08046*

TOGETHER with the bond or obligation therein described, and the money due and to grow due thereon, with the
interest. To have and to hold the same unto the said Party of the Second Part, its successors or assigns
forever, subject to the provision in the said Indenture of Mortgage mentioned: and it does hereby make,
constitute, and appoint the said Party of the Second Part its true and lawful attorney, irrevocable, in its
name, or otherwise, but at its proper costs and charges, to have, use and take all lawful ways and means for
the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as it
might or could do if these presents were not made.

Loan No.

(NMRI.NJ)

*P=S.002.00013.79*
*C=s.367.0007*

MIN ▆▆▆▆▆▆▆▆▆
Page 1 of 2

*J=LB8040110AI.s.04027*

MERS PHONE: 1-888-679-6377

LOAN NO.        *[LB0142]*

In Witness Whereof, the said Party of the First Part hath caused this instrument's execution; attested by its
*ASSISTANT SECRETARY* _____, and these presents to be signed by its
*ASSISTANT SECRETARY* _____, This *OCTOBER 27, 2010* ____,
but effective *JUNE 1, 2010* ____.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.

WITNESS *JARED PETT*

BY _____

*BRIDGETTE FOSTER*
*ASSISTANT SECRETARY*

BY _____

*CARMEN RIVERA*
*ASSISTANT SECRETARY*

STATE OF *IDAHO* _____ )
                              )
COUNTY OF *BONNEVILLE* _____ )

On the *27th* day of *OCTOBER* ____, *2010*, before me, *KRYSTAL HALL* ____,
personally appeared *CARMEN RIVERA* ____ and *BRIDGETTE FOSTER* ____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) who executed
the within instrument as *ASSISTANT SECRETARY* _____
and *ASSISTANT SECRETARY* _____ on behalf of the
*MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS* _____
_____,
pursuant to its by-laws or a resolution of the board of directors of the said Corporation; and for the voluntary
act and deed of said Corporation, in presence of deponent, who thereupon subscribed his / her name thereto as
attesting witness.   WITNESS my hand and official seal.

*KRYSTAL HALL   (COMMISSION EXP. 11-14-11)*
NOTARY PUBLIC

KRYSTAL HALL
NOTARY PUBLIC
STATE OF IDAHO

*MIN* ▓▓▓▓▓▓▓▓▓▓▓    *MERS PHONE: 1-888-679-6377*

(NMRI.NJ.2)                         Page 2 of 2
*P=S.002.00013.79*    *J=LB8040110AI.s.04027*
*C=s.367.0007*

*AB 1984 PG 190*

# RECORDING DATA PAGE

```
Consideration :
Code           :
Transfer Fee   :
Recording Date: 11/17/2010
Document No    : 4771824       gjones

PLUESE BECKER & SALTZMAN
20000 HORIZON WAY STE 900
MT LAUREL, NJ  08054


Receipt No     : 912382
Document No    : 4771824
Document Type  : ASM
Recording Date: 11/17/2010
Login Id       : gjones

        Recorded
  Nov 17 2010 08:33am
Burlington County Clerk
```

**Clerk of Burlington County • 49 Rancocas Rd. • Mt. Holly, NJ 08060**
**609-265-5180**

AB:1984 PG|91

"ORIGINAL"

# NOTE

June 22, 2007                    Cherry Hill                    New Jersey
        [Date]                        [City]                        [State]

36 Beverdale Lane, Willingboro, NJ  08046

[Property Address]

**1. BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $118,400.00        (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is GreenPoint Mortgage Funding, Inc.


I will make all payments under this Note in the form of cash, check or money order.
    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of            8.000 %.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

**3. PAYMENTS**
    **(A) Time and Place of Payments**
    I will pay principal and interest by making a payment every month.
    I will make my monthly payment on the 1st       day of each month beginning on August 1, 2007        . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on July 1, 2037          , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."
    I will make my monthly payments at P.O. Box 1093, Branford, CT 06405-8093
                                    or at a different place if required by the Note Holder.


    **(B) Amount of Monthly Payments**
    My monthly payment will be in the amount of U.S. $ 868.78

**4. BORROWER'S RIGHT TO PREPAY**
    I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.
    I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.



MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

                            Form 3200 1/01
Wolters Kluwer Financial Services

VMP®-5N (0207)02
Page 1 of 3

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15            calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be            5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



Form 3200 1/01

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Laverne Brown_ _____ (Seal)      _____ (Seal)
Laverne Brown.                    -Borrower                                        -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                                        -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                                        -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                                        -Borrower

*[Sign Original Only]*

WITHOUT RECOURSE
PAY TO THE ORDER OF:

GreenPoint Mortgage Funding, Inc.

Larry R. Kern
Assistant Vice President

 Federal National Mortgage Association

IMAGED